**16SL-CC04165**

Electronically Filed - St Louis County - November 10, 2016 - 04:01 PM

## IN THE TWENTY-FIRST JUDICIAL CIRCUIT COURT
## ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| **Bibi Franceschelli, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs**<br><br>**v.**<br><br>**DEUTSCHE LUFTHANSA AG,**<br>**Serve: Registered Agent**<br>**1640 Hempstead Turnpike**<br>**East Meadow, NY 11554**<br><br>**Defendant.** | **Case No.:**<br><br>**Division:**<br><br><u>**JURY TRIAL DEMANDED**</u> |

### CLASS ACTION PETITION

Plaintiff, Bibi Franceschelli, individually and on behalf of all others similarly situated ("the Class"), brings this action against Defendant Deutsche Lufthansa AG ("Lufthansa"). Plaintiff seeks certification of her claims against Lufthansa as a class action. Plaintiff, by and through Plaintiff's attorneys, submit this Class Action Petition (the "Petition"), and allege as follows:

### I.    NATURE OF THE ACTION

1.    This proposed class action concerns Lufthansa's breach of contract, breach of its covenant of good faith and fair dealing and violation of Regulation No. 261/2004 of the European Parliament and European Council ("EU Regulation 261"). Under Lufthansa's General Conditions of Carriage and EU Regulation 261, passengers with confirmed reservations on flights departing from or destined to an airport in a member state of the European Union are entitled, with certain exceptions described below, to be paid by Lufthansa a set amount of compensation when their flights are canceled or delayed for three hours or more. Lufthansa has failed to honor this right

Electronically Filed - St. Louis County - November 10, 2016 - 04:01 PM

under the General Conditions of Carriage and under EU Regulation 261 as to the named Plaintiff and the members of the Class.  This action seeks damages for the named Plaintiff and each member of the Class in the amount established by the General Conditions of Carriage and EU Regulation 261.

## II.   JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to R.S.Mo. 508.010

3.      This case is properly maintainable as a class action pursuant to and in accordance with Rule 52 of the Missouri Rules of Civil Procedure in that:

(a)     The Class is so numerous that joinder of all members is impractical;

(b)     There are substantial questions of law and fact common to the Class including those set forth in greater particularity below;

(c)     Questions of law and fact enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

(d)     A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

(e)     The relief sought in this class action will effectively and efficiently provide relief to all members of the class; and

(f)     There are no unusual difficulties foreseen in the management of this class action.

4.      The Court has personal jurisdiction over Lufthansa, which has at least minimum contacts with the State of Missouri because Lufthansa has conducted business there and has availed itself of Missouri markets through its operations, offices, sales, and marketing efforts.

## III.   PARTIES

5.      Plaintiff Bibi Franceschelli is a citizen of the State of Missouri, residing in St. Louis County.

Electronically Filed - St Louis County - November 10, 2016 - 04:01 PM

6.      Defendant Lufthansa is a German corporation organized under the laws of the Germany and maintains is principal place of business in Germany.

## IV.     FACTUAL ALLEGATIONS

### A.      EU REGULATION 261

7.      EU Regulation 261 was adopted by the European Parliament and the Council of the European Union on February 11, 2004.  A copy is attached hereto as **Exhibit 1**.  The purpose of EU Regulation 261 is, in part, to provide standardized compensation - separate from individualized compensation which may be provided by other laws upon individualized proof - for the "serious trouble and inconvenience" inevitably suffered by all passengers who experience flight cancellations or lengthy delays, particularly on international carrier routes.

8.      Pursuant to Article 3, EU Regulation 261 applies to passengers with confirmed reservations on (a) flights departing from an airport located in the territory of a member state of the European Union, and (b) flights departing from a country outside the European Union to an airport in the territory of a member state of the European Union, if the operating carrier of the flight concerned is an air carrier with an operating license granted by a member state of the European Union.

9.      Pursuant to Article 5, confirmed passengers on flights covered by Article 3, in case of cancellation of the flight "have the right to compensation by the operating air carrier in accordance with Article 7 of the Regulation unless: (a) they are informed of the cancellation at least two weeks before the scheduled time of departure; or (b) they are informed of the cancellation between two weeks and seven days before the scheduled time of departure and are offered re-routing, allowing them to depart no more than two hours before the scheduled time of departure and to reach their final destination less than four hours after the scheduled time of arrival; or (c)

Electronically Filed - St Louis County - November 10, 2016 - 04:01 PM

they are informed of the cancellation less than seven days before the scheduled time of departure and are offered re-routing, allowing them to depart no more than one hour before the scheduled time of departure and to reach their final destination less than two hours after the scheduled time of arrival." Also under Article 3, an "operating air carrier shall not be obliged to pay compensation in accordance with Article 7, if it can prove that the cancellation is caused by extraordinary circumstances which could not have been avoided even if all reasonable measures had been taken."

10.    Pursuant to Article 7, passengers eligible under Articles 3 and 5 on flights that were cancelled, "shall receive compensation amounting to: (a) EUR 250 for all flights of 1500 kilometres or less; (b) EUR 400 for all intra-Community flights of more than 1500 kilometres, and for all other flights between 1500 and 3500 kilometres; (c) EUR 600 for all flights not falling under (a) or (b)."

11.    Article 7 also provides that the operating carrier may reduce the compensation amounts by 50% when "passengers are offered re-routing to their final destination on an alternative flight, the arrival time of which does not exceed the scheduled arrival time of the flight originally booked (a) by two hours, in respect of all flights of 1500 kilometres or less; or (b) by three hours, in respect of all intra-Community flights of more than 1500 kilometres and for all other flights between 1500 and 3500 kilometres; or (c) by four hours, in respect of all flights not falling under (a) or (b)."

On November 19, 2009, in *Sturgeon v. Condor Flugdienst GmbH,* the European Court of Justice ruled that "Article 5, 6 and 7 of Regulation No 261/2004 must be interpreted as meaning that passengers whose flights are delayed may be treated, for the purposes of the application of the right to compensation, as passengers whose flights are cancelled and may thus rely on the right to compensation laid down in Article 7 of the regulation where they suffer, on account of a flight delay, a loss of time equal to or in excess of three hours." In addition, the European Court of Justice ruled that "Article 5(3) of Regulation No 261/2004 must be interpreted as meaning that a technical problem in an aircraft which leads to the cancellation or delay of a flight is not covered by the concept of "extraordinary circumstances"

4

Electronically Filed - St Louis County - November 10, 2016 - 04:01 PM

within the meaning of that provision, unless that problem stems from events which, by their nature or origin, are not inherent in the normal exercise of the activity of the air carrier concerned and are beyond its actual control."

12.     The right to compensation under Articles 5, 6 and 7 of EU Regulation 261 is separate from any right to compensation or damages, based upon individualized proof, any passenger may have premised on a separate cause of action under separate law.

## B.     LUFTHANSA'S CONTRACTUAL OBLIGATION TO THE CLASS MEMBERS

13.     Lufthansa has an operating license granted by Germany, a member of the European Union.

14.     Each passenger carried on a flight operated by Lufthansa is issued a ticket which includes Conditions of Contract, which incorporate by reference Lufthansa's General Conditions of Carriage.  A copy of the Lufthansa's General Conditions of Carriage is attached hereto as **Exhibit 2**.

15.     Article 9.2.2 of Lufthansa's General Conditions of Carriage provides, "In case of a flight cancellation or flight delay we offer assistance and compensation to the concerned passengers according to the Regulation EC 261/2004."

16.     Article 14.5.5 provides "In case of flight cancellation we offer assistance and ticket refund to the passenger within the scope of Regulation (EC) 261/2004.  If a financial compensation has to be paid, the amounts mentioned in article 14.5.3 and the conditions of article 14.5.3 are valid."

17.     Article 14.5.3 sets out for the compensation to be paid by Lufthansa to passengers as follows:

> On all flights with a distance to destination of 0 km - 1,500 km (0 - 932 miles) the compensation amount is € 250; reduction of compensation by 50% (compensation € 125), if the arrival time of the

Electronically Filed - St Louis County - November 10, 2016 - 04:01 PM

alternative flight is not later than 2 hours after scheduled arrival time of flight.

On all intra-community flights with a distance of more than 1,500 km (932 miles) as well as on all other flights with a distance of 1,500 km - 3,500 km (932 - 2,175 miles) the compensation amount is € 400; reduction of compensation by 50% (compensation € 200), if the arrival time of the alternative flight is not later than 3 hours after scheduled arrival time of flight.

On all flights outside the community with a distance of more than 3,500 km (2,175 miles) the compensation amount is € 600; reduction of compensation by 50% (compensation € 300), if the arrival time of the alternative flight is below/up to 4 hours after scheduled arrival time of flight.

Payment will be made in local currency, at least at the fixed rate of exchange valid for the Euro.

18.     Lufthansa is the flag carrier airline of Germany with over 50 million passengers per year.  A significant percentage of Lufthansa's flights are to and/or from an airport located in a member state of the European Union.  A significant percentage of those flights to and/or from an airport located in a member state of the European Union are cancelled, or delayed for three hours or more, for reasons other than extraordinary circumstances.  A significant percentage of the passengers on such delayed or cancelled flights are residents of the United States.

19.     Lufthansa has repeatedly failed to pay compensation in the amounts set forth in the General Conditions of Carriage and EU Regulation 261 to passengers entitled to such compensation and who are residents of the United States.

20.     Plaintiff, Plaintiff's husband, and Plaintiff's two (2) children were confirmed passengers on Lufthansa Flight 8961 scheduled to depart on March 20, 2015 at 6:15 p.m. from Lambert International Airport in Saint Louis, Missouri and, through O'Hare International Airport Chicago, Illinois, Plaintiff would ultimately arrive in Florence, Italy at Amerigo Vespucci Airport, an airport located in a member state of the European Union.

Electronically Filed - St Louis County - November 10, 2016 - 04:01 PM

21.     The same as with any United States passenger traveling to Europe, a contract, incorporating and providing the remedies available under EU Regulation 261, existed between Lufthansa and Plaintiff for Flight 8961.

22.     Flight 8961 was cancelled.  Flight 8961 was not cancelled due to extraordinary circumstances.

23.     On account of the flight cancellation, Plaintiff and Plaintiff's family were not able to depart for Florence, Italy until March 23, 2015, causing Plaintiff irreparable harm.

24.     Plaintiffs were not offered re-routing that would have allowed them to depart no more than one hour before the scheduled time of departure and to reach their final destination less than two hours after the scheduled time of arrival.

25.     Plaintiff did not receive any compensation for the delayed flight.

C.     **CLASS ACTION ALLEGATIONS**

26.     Plaintiff brings this action individually and on behalf of all other similarly situated ("the Class") pursuant to Rule 52 of the Missouri Rules of Civil Procedure.

27.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Missouri Rules of Civil Procedure Rule 52.

28.     Plaintiff brings this action as class representative to recover compensation required to be paid under Lufthansa's General Conditions of Carriage and EU Regulation 261.

29.     Plaintiff seeks certification of the following class:

All persons residing in the United States who meet the following requirements:

(a)     Such person had a confirmed reservation on a flight operated by Lufthansa by motorized fixed wing aircraft schedule to arrive at its destination on or after March 20, 2005;

(b)     Such flight was scheduled either to depart from an airport located in the territory of a member state to which the Treaty Establishing the

Electronically Filed - St Louis County - November 10, 2016 - 04:01 PM

European Community ("Treaty") applies or to arrive at an airport situated in the territory of a member state to which the Treaty applies;

(c)     Such flight was delayed or cancelled for a reason other than extraordinary circumstances;

(d)     Such person was informed of the delay or cancellation less than seven days before the scheduled time of departure and was not offered rerouting, allowing them to depart no more than one hour before the scheduled time of departure and to reach their final destination less than two hours after the scheduled time of arrival;

(e)     Such person affected by delay was delayed for at least three hours; and

(f)     Such person has not received compensation in the amount set forth in Article 7 of EU Regulation 261/2004.

30.     Excluded from the Classes are:

a.     Defendants and any entities in which Defendants have a controlling interest;

b.     Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendants;

c.     Persons or entities with claims for personal injury, wrongful death, and/or emotional distress;

d.     All persons or entities that properly execute and timely file a request for exclusion from the Class;

e.     Any attorneys representing the Plaintiff or the Class; and

Electronically Filed - St Louis County - November 10, 2016 - 04:01 PM

31.     Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate and as the Court may otherwise allow.

32.     **Numerosity -** The members of the Classes are so numerous that joinder of all members would be impracticable.  The exact number or identification of the Class members is presently unknown.  The Classes each consist of hundreds, if not thousands, of members and the identity of those persons is within the knowledge of and can be ascertained by resorting to Defendants' records.  In addition to manifests, databases and rolls maintained by Lufthansa and its agents, the Class members may be located and informed of the pendency of this action by a combination of electronic bulletins, e-mail, direct mail and public notice, or other means.  The disposition of the claims of the proposed class members through this class action will benefit both the parties and the Court.

33.     **Commonality -** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members.  There is a well-defined community of interest in the questions of law and fact involved affecting members of the Class.  The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

(g)     Whether Lufthansa's General Conditions of Carriage requires Lufthansa to pay compensation to the Class members;

(h)     Whether EU Regulation 261 requires Lufthansa to pay compensation to the Class members;

(i)     Whether Lufthansa failed to compensate the Class members in the amounts specified in the General Conditions of Carriage;

(j)     Whether Lufthansa failed to compensate the Class members in the amounts specified in EU Regulation 261; and

Electronically Filed - St Louis County - November 10, 2016 - 04:01 PM

(k)    Whether Lufthansa breached its contract with the Class members by failing to pay the compensation required under the General Conditions of Carriage and EU Regulation 261.

34.    **Typicality** – Plaintiff asserts claims that are typical of the entire Class, having all been entitled to receive financial compensation pursuant to the General Conditions of Carriage and EU Regulation 261 and having not received such compensation.  Plaintiffs and the Class members have similarly suffered harm arising from Lufthansa's failure to pay compensation as alleged in this Complaint.

35.    **Adequacy of Representation** - Plaintiff is an adequate representative of the Class because Plaintiff fits within the class definition and Plaintiff's interests do not conflict with the interests of the Members of the Class Plaintiff seeks to represent.  Plaintiff is passionate about this litigation personally and will prosecute this action vigorously for the benefit of the entire Class.  Plaintiff is represented by experienced and able attorneys who have litigated numerous class actions, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the entire Class.  Plaintiff and class counsel can fairly and adequately protect the interests of all of the Members of the Class.

36.    **Superiority of Class Action** - The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Plaintiff and members of the Class have suffered irreparable harm as a result of Defendants' fraudulent, deceitful, unlawful, and unfair conduct.  Because of the size of the individual Class members' claims, no Class members could afford to seek legal redress for the wrongs identified in this Complaint.  Without the class action vehicle, the Class members would have no reasonable remedy and would continue to suffer losses, as Defendant continues to fail to compensate

Electronically Filed - St Louis County - November 10, 2016 - 04:01 PM

passengers as required under its General Conditions of Carriage and EU Regulation 261 and Defendants would be permitted to retain the proceeds from their continued violations of law. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. There will be no difficulty in the management of this action as a class action.

### V.    CLASS CLAIMS

### COUNT ONE
### BREACH OF CONTRACT

37.    Plaintiff restates and re-alleges the preceding paragraphs of the Petition as if fully set forth at length herein.

38.    Lufthansa's General Conditions of Carriage and EU Regulation 261, incorporated therein, require Lufthansa to provide specified compensation to the Class for cancelled flights and flights delayed for three or more hours, as set forth above.

39.    Lufthansa has violated the General Conditions of Carriage by failing to pay such compensation to the Class.

### COUNT TWO
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

40.    Plaintiff restates and re-alleges the preceding paragraphs of the Petition as if fully set forth at length herein.

41.    Lufthansa entered into a contract with Plaintiff as described above. Lufthansa engaged in conduct separate and apart from its performance and obligations under the contract without good faith. Lufthansa knew or reasonably should have known that the flight would be cancelled and did not provide adequate notice or accommodation to Plaintiff.

Electronically Filed - St Louis County - November 10, 2016 - 04:01 PM

42.     Because of Lufthansa's breach of good faith and fair dealing, Plaintiff has suffered damages.

43.     Lufthansa breached its covenant of good faith and fair dealing as set forth above.

## VII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully seeks the following relief against Defendant:

A.     An Order declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel;

B.     That judgment be entered against Defendant and in favor of Plaintiffs and the Class, for actual, compensatory damages, and equitable relief from Defendant in an amount to be determined at trial; believed to be in excess of $25,000.00.

C.     A Judgment awarding Plaintiff and the Classes reasonable attorneys' fees and litigation costs;

D.     That judgment be entered imposing both pre- and post- judgment interest on damages, litigation costs, and attorneys' fees against Defendant; and

E.     For all other and further relief as this Court may deem necessary and appropriate.

## <u>JURY DEMAND</u>

Plaintiffs demand a trial by jury on all issues so triable.

Electronically Filed - St. Louis County - November 10, 2016 - 04:01 PM

THE ONDER LAW FIRM

By:    */s/ Martin L. Daesch* _____
       Martin L. Daesch, #40494
       Jesse B. Rochman, #60712
       110 E. Lockwood Ave.
       St. Louis, MO  63119
       (314) 963-9000 (telephone)
       (314) 963-1700 (facsimile)
       daesch@onderlaw.com
       rochman@onderlaw.com

       *Attorneys for Plaintiff*



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division: | Case Number:  16SL-CC04165 |
|---|---|
| ELLEN LEVY SIWAK | |
| Plaintiff/Petitioner: | Plaintiff's/Petitioner's Attorney/Address: |
| BIBI FRANCESCHELLI | MARTIN L DAESCH |
| | 110 EAST LOCKWOOD AVE |
| vs. | ST LOUIS, MO  63119 |
| Defendant/Respondent: | Court Address: |
| DEUTSCHE LUFTHANSA AG | ST LOUIS COUNTY COURT BUILDING |
| Nature of Suit: | 105 SOUTH CENTRAL AVENUE |
| CC Breach of Contract | CLAYTON, MO  63105 |

(Date File Stamp)

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  DEUTSCHE LUFTHANSA AG
Alias:

REGISTERED AGENT
1640 HEMPSTEAD TURNPIKE
EAST MEADOW, NY  11554

*COURT SEAL OF*

*ST. LOUIS COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

<u>14-NOV-2016</u>
Date
Further Information:
AD

_____ Clerk

## Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
  _____, a person of the Defendant's/Respondent's family over the age of 15 years.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
  _____ (name) _____ (title).
☐ other (describe) _____
  _____ (address)

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

Subscribed and Sworn To me before this _____ (day) _____ (month) _____ (year)
I am: (check one)   ☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☐ authorized to administer oaths in the state in which the affiant served the above summons.
  (use for out-of-state officer)
☐ authorized to administer oaths.  (use for court-appointed server)

*(Seal)*

_____
Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____  (_____ miles @ $_____ per mile) |
| Total | $_____ |

**See the following page for directions to clerk and to officer making return on service of summons.**

### Directions to Clerk

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54. The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered. The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service. The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy. The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy. If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons. This form is not for use in attachment actions. (See Rule 54.06, 54.07 and 54.14)

### Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court. The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

## THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

(1) **Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

(2) **Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

OSCA (7-04) SM60 *For Court Use Only:* Document ID# 16-SMOS-956      3      (16SL-CC04165)      Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

OSCA (7-04) SM60 *For Court Use Only*: Document ID# 16-SMOS-956      4        (16SL-CC04165)                          Rules 54.06, 54.07, 54.14, 54.20;
                                                                                                                      506.500, 506.510 RSMo

Electronically Filed - St Louis County - November 23, 2016 - 11:59 AM

## THE TWENTY-FIRST JUDICIAL CIRCUIT COURT
## ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| **Bibi Franceschelli, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs**<br><br>v.<br><br>**DEUTSCHE LUFTHANSA AG,**<br>**Serve: Registered Agent**<br>**1640 Hempstead Turnpike**<br>**East Meadow, NY 11554**<br><br>**Defendant.** | **Case No.: 16SL-CC04165**<br><br>**Division: 11**<br><br>**JURY TRIAL DEMANDED** |

### MEMORANDUM

COMES NOW, Plaintiff Bibi Franceschelli, Individually and on behalf of all others similarly situated, and files Exhibits 1 and 2 herewith.  These Exhibits were inadvertently omitted to the Class Action Petition filed on November 10, 2016.

THE ONDER LAW FIRM

By:  /s/ Martin L. Daesch
Martin L. Daesch, #40494
Jesse B. Rochman, #60712
110 E. Lockwood Ave.
St. Louis, MO  63119
(314) 963-9000 (telephone)
(314) 963-1700 (facsimile)
daesch@onderlaw.com
rochman@onderlaw.com
Attorneys for Plaintiff

### CERTIFICATE OF SERVICE

A true copy of the above and foregoing was electronically filed with the Probate Court of St. Louis County via the Missouri eFiling system on this 23rd day of November, 2016.

/s/Martin L. Daesch

EUR-Lex - 32004R0261 - EN - EUR-Lex

Page 1 of 7

Electronically Filed - St Louis County - November 23, 2016 - 11:59 AM

Document 32004R0261

About this document     Text     Summary of legislation     Procedure     Linked documents     All   Collapse all | Expand all

Title and reference

Regulation (EC) No 261/2004 of the European Parliament and of the Council of 11 February 2004 establishing common rules on compensation and assistance to passengers in the event of denied boarding and of cancellation or long delay of flights, and repealing Regulation (EEC) No 295/91 (Text with EEA relevance) - Commission Statement

*OJ L 46, 17.2.2004, p. 1–8 (ES, DA, DE, EL, EN, FR, IT, NL, PT, FI, SV)*
*Special edition in Czech: Chapter 07 Volume 008 P. 10 – 16*
*Special edition in Estonian: Chapter 07 Volume 008 P. 10 – 16*
*Special edition in Latvian: Chapter 07 Volume 008 P. 10 – 16*
*Special edition in Lithuanian: Chapter 07 Volume 008 P. 10 – 16*
*Special edition in Hungarian Chapter 07 Volume 008 P. 10 – 16*
*Special edition in Maltese: Chapter 07 Volume 008 P. 10 – 16*
*Special edition in Polish: Chapter 07 Volume 008 P. 10 – 16*
*Special edition in Slovak: Chapter 07 Volume 008 P. 10 – 16*
*Special edition in Slovene: Chapter 07 Volume 008 P. 10 – 16*
*Special edition in Bulgarian: Chapter 07 Volume 012 P. 218 – 224*
*Special edition in Romanian: Chapter 07 Volume 012 P. 218 – 224*
*Special edition in Croatian: Chapter 07 Volume 026 P. 21 – 27*

ELI: http://data.europa.eu/eli/reg/2004/261/oj

Languages, formats and link to OJ

| | BG | ES | CS | DA | DE | ET | EL | EN | FR | GA | HR | IT | LV | LT | HU | MT | NL | PL | PT | RO | SK | SL | FI | SV |
|---|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|
| HTML | | | | | | | | | | | | | | | | | | | | | | | | |
| PDF | | | | | | | | | | | | | | | | | | | | | | | | |
| Official Journal | | | | | | | | | | | | | | | | | | | | | | | | |

To see if this document has been published in an e-OJ with legal value, click on the icon above (For OJs published before 1st July 2013, only the paper version has legal value).

Multilingual display

Language 1 English (en)  Language 2 Please choose  Language 3 Please choose  Display

Text

32004R0261

**Regulation (EC) No 261/2004 of the European Parliament and of the Council of 11 February 2004 establishing common rules on compensation and assistance to passengers in the event of denied boarding and of cancellation or long delay of flights, and repealing Regulation (EEC) No 295/91 (Text with EEA relevance) - Commission Statement**

*Official Journal L 046 , 17/02/2004 P. 0001 - 0008*

> Regulation (EC) No 261/2004 of the European Parliament and of the Council
>
> of 11 February 2004
>
> establishing common rules on compensation and assistance to passengers in the event of denied boarding and of cancellation or long delay of flights, and repealing Regulation (EEC) No 295/91
>
> (Text with EEA relevance)
>
> THE EUROPEAN PARLIAMENT AND THE COUNCIL OF THE EUROPEAN UNION,
>
> Having regard to the Treaty establishing the European Community, and in particular Article 80(2) thereof,
>
> Having regard to the proposal from the Commission(1),
>
> Having regard to the opinion of the European Economic and Social Committee(2),
>
> After consulting the Committee of the Regions,
>
> Acting in accordance with the procedure laid down in Article 251 of the Treaty(3), in the light of the joint text approved by the Conciliation Committee on 1 December 2003,
>
> Whereas:



EXHIBIT
tabbies
1

EUR-Lex - 32004R0261 - EN - EUR-Lex

(1) Action by the Community in the field of air transport should aim, among other things, at ensuring a high level of protection for passengers. Moreover, full account should be taken of the requirements of consumer protection in general.

(2) Denied boarding and cancellation or long delay of flights cause serious trouble and inconvenience to passengers.

(3) While Council Regulation (EEC) No 295/91 of 4 February 1991 establishing common rules for a denied boarding compensation system in scheduled air transport(4) created basic protection for passengers, the number of passengers denied boarding against their will remains too high, as does that affected by cancellations without prior warning and that affected by long delays.

(4) The Community should therefore raise the standards of protection set by that Regulation both to strengthen the rights of passengers and to ensure that air carriers operate under harmonised conditions in a liberalised market.

(5) Since the distinction between scheduled and non-scheduled air services is weakening, such protection should apply to passengers not only on scheduled but also on non-scheduled flights, including those forming part of package tours.

(6) The protection accorded to passengers departing from an airport located in a Member State should be extended to those leaving an airport located in a third country for one situated in a Member State, when a Community carrier operates the flight.

(7) In order to ensure the effective application of this Regulation, the obligations that it creates should rest with the operating air carrier who performs or intends to perform a flight, whether with owned aircraft, under dry or wet lease, or on any other basis.

(8) This Regulation should not restrict the rights of the operating air carrier to seek compensation from any person, including third parties, in accordance with the law applicable.

(9) The number of passengers denied boarding against their will should be reduced by requiring air carriers to call for volunteers to surrender their reservations, in exchange for benefits, instead of denying passengers boarding, and by fully compensating those finally denied boarding.

(10) Passengers denied boarding against their will should be able either to cancel their flights, with reimbursement of their tickets, or to continue them under satisfactory conditions, and should be adequately cared for while awaiting a later flight.

(11) Volunteers should also be able to cancel their flights, with reimbursement of their tickets, or continue them under satisfactory conditions, since they face difficulties of travel similar to those experienced by passengers denied boarding against their will.

(12) The trouble and inconvenience to passengers caused by cancellation of flights should also be reduced. This should be achieved by inducing carriers to inform passengers of cancellations before the scheduled time of departure and in addition to offer them reasonable re-routing, so that the passengers can make other arrangements. Air carriers should compensate passengers if they fail to do this, except when the cancellation occurs in extraordinary circumstances which could not have been avoided even if all reasonable measures had been taken.

(13) Passengers whose flights are cancelled should be able either to obtain reimbursement of their tickets or to obtain re-routing under satisfactory conditions, and should be adequately cared for while awaiting a later flight.

(14) As under the Montreal Convention, obligations on operating air carriers should be limited or excluded in cases where an event has been caused by extraordinary circumstances which could not have been avoided even if all reasonable measures had been taken. Such circumstances may, in particular, occur in cases of political instability, meteorological conditions incompatible with the operation of the flight concerned, security risks, unexpected flight safety shortcomings and strikes that affect the operation of an operating air carrier.

(15) Extraordinary circumstances should be deemed to exist where the impact of an air traffic management decision in relation to a particular aircraft on a particular day gives rise to a long delay, an overnight delay, or the cancellation of one or more flights by that aircraft, even though all reasonable measures had been taken by the air carrier concerned to avoid the delays or cancellations.

(16) In cases where a package tour is cancelled for reasons other than the flight being cancelled, this Regulation should not apply.

(17) Passengers whose flights are delayed for a specified time should be adequately cared for and should be able to cancel their flights with reimbursement of their tickets or to continue them under satisfactory conditions.

(18) Care for passengers awaiting an alternative or a delayed flight may be limited or declined if the provision of the care would itself cause further delay.

(19) Operating air carriers should meet the special needs of persons with reduced mobility and any persons accompanying them.

(20) Passengers should be fully informed of their rights in the event of denied boarding and of cancellation or long delay of flights, so that they can effectively exercise their rights.

(21) Member States should lay down rules on sanctions applicable to infringements of the provisions of this Regulation and ensure that these sanctions are applied. The sanctions should be effective, proportionate and dissuasive.

(22) Member States should ensure and supervise general compliance by their air carriers with this Regulation and designate an appropriate body to carry out such enforcement tasks. The supervision should not affect the rights of passengers and air carriers to seek legal redress from courts under procedures of national law.

(23) The Commission should analyse the application of this Regulation and should assess in particular the opportunity of extending its scope to all passengers having a contract with a tour operator or with a Community carrier, when departing from a third country airport to an airport in a Member State.

(24) Arrangements for greater cooperation over the use of Gibraltar airport were agreed in London on 2 December 1987 by the Kingdom of Spain and the United Kingdom in a joint declaration by the Ministers of Foreign Affairs of the two countries. Such arrangements have yet to enter into operation.

EUR-Lex - 32004R0261 - EN - EUR-Lex

Page 3 of 7

Electronically Filed - St Louis County - November 23, 2016 - 11:59 AM

(25) Regulation (EEC) No 295/91 should accordingly be repealed.

HAVE ADOPTED THIS REGULATION:

Article 1

Subject

1. This Regulation establishes, under the conditions specified herein, minimum rights for passengers when:

(a) they are denied boarding against their will;

(b) their flight is cancelled;

(c) their flight is delayed.

2. Application of this Regulation to Gibraltar airport is understood to be without prejudice to the respective legal positions of the Kingdom of Spain and the United Kingdom with regard to the dispute over sovereignty over the territory in which the airport is situated.

3. Application of this Regulation to Gibraltar airport shall be suspended until the arrangements in the Joint Declaration made by the Foreign Ministers of the Kingdom of Spain and the United Kingdom on 2 December 1987 enter into operation. The Governments of Spain and the United Kingdom will inform the Council of such date of entry into operation.

Article 2

Definitions

For the purposes of this Regulation:

(a) "air carrier" means an air transport undertaking with a valid operating licence;

(b) "operating air carrier" means an air carrier that performs or intends to perform a flight under a contract with a passenger or on behalf of another person, legal or natural, having a contract with that passenger;

(c) "Community carrier" means an air carrier with a valid operating licence granted by a Member State in accordance with the provisions of Council Regulation (EEC) No 2407/92 of 23 July 1992 on licensing of air carriers(5);

(d) "tour operator" means, with the exception of an air carrier, an organiser within the meaning of Article 2, point 2, of Council Directive 90/314/EEC of 13 June 1990 on package travel, package holidays and package tours(6);

(e) "package" means those services defined in Article 2, point 1, of Directive 90/314/EEC;

(f) "ticket" means a valid document giving entitlement to transport, or something equivalent in paperless form, including electronic form, issued or authorised by the air carrier or its authorised agent;

(g) "reservation" means the fact that the passenger has a ticket, or other proof, which indicates that the reservation has been accepted and registered by the air carrier or tour operator;

(h) "final destination" means the destination on the ticket presented at the check-in counter or, in the case of directly connecting flights, the destination of the last flight; alternative connecting flights available shall not be taken into account if the original planned arrival time is respected;

(i) "person with reduced mobility" means any person whose mobility is reduced when using transport because of any physical disability (sensory or locomotory, permanent or temporary), intellectual impairment, age or any other cause of disability, and whose situation needs special attention and adaptation to the person's needs of the services made available to all passengers;

(j) "denied boarding" means a refusal to carry passengers on a flight, although they have presented themselves for boarding under the conditions laid down in Article 3(2), except where there are reasonable grounds to deny them boarding, such as reasons of health, safety or security, or inadequate travel documentation;

(k) "volunteer" means a person who has presented himself for boarding under the conditions laid down in Article 3 (2) and responds positively to the air carrier's call for passengers prepared to surrender their reservation in exchange for benefits.

(l) "cancellation" means the non-operation of a flight which was previously planned and on which at least one place was reserved.

Article 3

Scope

1. This Regulation shall apply:

(a) to passengers departing from an airport located in the territory of a Member State to which the Treaty applies;

(b) to passengers departing from an airport located in a third country to an airport situated in the territory of a Member State to which the Treaty applies, unless they received benefits or compensation and were given assistance in that third country, if the operating air carrier of the flight concerned is a Community carrier.

2. Paragraph 1 shall apply on the condition that passengers:

(a) have a confirmed reservation on the flight concerned and, except in the case of cancellation referred to in Article 5, present themselves for check-in,

- as stipulated and at the time indicated in advance and in writing (including by electronic means) by the air carrier, the tour operator or an authorised travel agent,

or, if no time is indicated,

- not later than 45 minutes before the published departure time; or

Electronically Filed - St Louis County - November 23, 2016 - 11:59 AM

(b) have been transferred by an air carrier or tour operator from the flight for which they held a reservation to another flight, irrespective of the reason.

3. This Regulation shall not apply to passengers travelling free of charge or at a reduced fare not available directly or indirectly to the public. However, it shall apply to passengers having tickets issued under a frequent flyer programme or other commercial programme by an air carrier or tour operator.

4. This Regulation shall only apply to passengers transported by motorised fixed wing aircraft.

5. This Regulation shall apply to any operating air carrier providing transport to passengers covered by paragraphs 1 and 2. Where an operating air carrier which has no contract with the passenger performs obligations under this Regulation, it shall be regarded as doing so on behalf of the person having a contract with that passenger.

6. This Regulation shall not affect the rights of passengers under Directive 90/314/EEC. This Regulation shall not apply in cases where a package tour is cancelled for reasons other than cancellation of the flight.

Article 4

Denied boarding

1. When an operating air carrier reasonably expects to deny boarding on a flight, it shall first call for volunteers to surrender their reservations in exchange for benefits under conditions to be agreed between the passenger concerned and the operating air carrier. Volunteers shall be assisted in accordance with Article 8, such assistance being additional to the benefits mentioned in this paragraph.

2. If an insufficient number of volunteers comes forward to allow the remaining passengers with reservations to board the flight, the operating air carrier may then deny boarding to passengers against their will.

3. If boarding is denied to passengers against their will, the operating air carrier shall immediately compensate them in accordance with Article 7 and assist them in accordance with Articles 8 and 9.

Article 5

Cancellation

1. In case of cancellation of a flight, the passengers concerned shall:

(a) be offered assistance by the operating air carrier in accordance with Article 8; and

(b) be offered assistance by the operating air carrier in accordance with Article 9(1)(a) and 9(2), as well as, in event of re-routing when the reasonably expected time of departure of the new flight is at least the day after the departure as it was planned for the cancelled flight, the assistance specified in Article 9(1)(b) and 9(1)(c); and

(c) have the right to compensation by the operating air carrier in accordance with Article 7, unless:

(i) they are informed of the cancellation at least two weeks before the scheduled time of departure; or

(ii) they are informed of the cancellation between two weeks and seven days before the scheduled time of departure and are offered re-routing, allowing them to depart no more than two hours before the scheduled time of departure and to reach their final destination less than four hours after the scheduled time of arrival; or

(iii) they are informed of the cancellation less than seven days before the scheduled time of departure and are offered re-routing, allowing them to depart no more than one hour before the scheduled time of departure and to reach their final destination less than two hours after the scheduled time of arrival.

2. When passengers are informed of the cancellation, an explanation shall be given concerning possible alternative transport.

3. An operating air carrier shall not be obliged to pay compensation in accordance with Article 7, if it can prove that the cancellation is caused by extraordinary circumstances which could not have been avoided even if all reasonable measures had been taken.

4. The burden of proof concerning the questions as to whether and when the passenger has been informed of the cancellation of the flight shall rest with the operating air carrier.

Article 6

Delay

1. When an operating air carrier reasonably expects a flight to be delayed beyond its scheduled time of departure:

(a) for two hours or more in the case of flights of 1500 kilometres or less; or

(b) for three hours or more in the case of all intra-Community flights of more than 1500 kilometres and of all other flights between 1500 and 3500 kilometres; or

(c) for four hours or more in the case of all flights not falling under (a) or (b),

passengers shall be offered by the operating air carrier:

(i) the assistance specified in Article 9(1)(a) and 9(2); and

(ii) when the reasonably expected time of departure is at least the day after the time of departure previously announced, the assistance specified in Article 9(1)(b) and 9(1)(c); and

(iii) when the delay is at least five hours, the assistance specified in Article 8(1)(a).

2. In any event, the assistance shall be offered within the time limits set out above with respect to each distance bracket.

Article 7

Right to compensation

1. Where reference is made to this Article, passengers shall receive compensation amounting to:

Electronically Filed - St Louis County - November 23, 2016 - 11:59 AM

(a) EUR 250 for all flights of 1500 kilometres or less;

(b) EUR 400 for all intra-Community flights of more than 1500 kilometres, and for all other flights between 1500 and 3500 kilometres;

(c) EUR 600 for all flights not falling under (a) or (b).

In determining the distance, the basis shall be the last destination at which the denial of boarding or cancellation will delay the passenger's arrival after the scheduled time.

2. When passengers are offered re-routing to their final destination on an alternative flight pursuant to Article 8, the arrival time of which does not exceed the scheduled arrival time of the flight originally booked

(a) by two hours, in respect of all flights of 1500 kilometres or less; or

(b) by three hours, in respect of all intra-Community flights of more than 1500 kilometres and for all other flights between 1500 and 3500 kilometres; or

(c) by four hours, in respect of all flights not falling under (a) or (b),

the operating air carrier may reduce the compensation provided for in paragraph 1 by 50 %.

3. The compensation referred to in paragraph 1 shall be paid in cash, by electronic bank transfer, bank orders or bank cheques or, with the signed agreement of the passenger, in travel vouchers and/or other services.

4. The distances given in paragraphs 1 and 2 shall be measured by the great circle route method.

Article 8

Right to reimbursement or re-routing

1. Where reference is made to this Article, passengers shall be offered the choice between:

(a) - reimbursement within seven days, by the means provided for in Article 7(3), of the full cost of the ticket at the price at which it was bought, for the part or parts of the journey not made, and for the part or parts already made if the flight is no longer serving any purpose in relation to the passenger's original travel plan, together with, when relevant,

- a return flight to the first point of departure, at the earliest opportunity;

(b) re-routing, under comparable transport conditions, to their final destination at the earliest opportunity; or

(c) re-routing, under comparable transport conditions, to their final destination at a later date at the passenger's convenience, subject to availability of seats.

2. Paragraph 1(a) shall also apply to passengers whose flights form part of a package, except for the right to reimbursement where such right arises under Directive 90/314/EEC.

3. When, in the case where a town, city or region is served by several airports, an operating air carrier offers a passenger a flight to an airport alternative to that for which the booking was made, the operating air carrier shall bear the cost of transferring the passenger from that alternative airport either to that for which the booking was made, or to another close-by destination agreed with the passenger.

Article 9

Right to care

1. Where reference is made to this Article, passengers shall be offered free of charge:

(a) meals and refreshments in a reasonable relation to the waiting time;

(b) hotel accommodation in cases

- where a stay of one or more nights becomes necessary, or

- where a stay additional to that intended by the passenger becomes necessary;

(c) transport between the airport and place of accommodation (hotel or other).

2. In addition, passengers shall be offered free of charge two telephone calls, telex or fax messages, or e-mails.

3. In applying this Article, the operating air carrier shall pay particular attention to the needs of persons with reduced mobility and any persons accompanying them, as well as to the needs of unaccompanied children.

Article 10

Upgrading and downgrading

1. If an operating air carrier places a passenger in a class higher than that for which the ticket was purchased, it may not request any supplementary payment.

2. If an operating air carrier places a passenger in a class lower than that for which the ticket was purchased, it shall within seven days, by the means provided for in Article 7(3), reimburse

(a) 30 % of the price of the ticket for all flights of 1500 kilometres or less, or

(b) 50 % of the price of the ticket for all intra-Community flights of more than 1500 kilometres, except flights between the European territory of the Member States and the French overseas departments, and for all other flights between 1500 and 3500 kilometres, or

(c) 75 % of the price of the ticket for all flights not falling under (a) or (b), including flights between the European territory of the Member States and the French overseas departments.

Article 11

Persons with reduced mobility or special needs

EUR-Lex - 32004R0261 - EN - EUR-Lex

1. Operating air carriers shall give priority to carrying persons with reduced mobility and any persons or certified service dogs accompanying them, as well as unaccompanied children.

2. In cases of denied boarding, cancellation and delays of any length, persons with reduced mobility and any persons accompanying them, as well as unaccompanied children, shall have the right to care in accordance with Article 9 as soon as possible.

Article 12

Further compensation

1. This Regulation shall apply without prejudice to a passenger's rights to further compensation. The compensation granted under this Regulation may be deducted from such compensation.

2. Without prejudice to relevant principles and rules of national law, including case-law, paragraph 1 shall not apply to passengers who have voluntarily surrendered a reservation under Article 4(1).

Article 13

Right of redress

In cases where an operating air carrier pays compensation or meets the other obligations incumbent on it under this Regulation, no provision of this Regulation may be interpreted as restricting its right to seek compensation from any person, including third parties, in accordance with the law applicable. In particular, this Regulation shall in no way restrict the operating air carrier's right to seek reimbursement from a tour operator or another person with whom the operating air carrier has a contract. Similarly, no provision of this Regulation may be interpreted as restricting the right of a tour operator or a third party, other than a passenger, with whom an operating air carrier has a contract, to seek reimbursement or compensation from the operating air carrier in accordance with applicable relevant laws.

Article 14

Obligation to inform passengers of their rights

1. The operating air carrier shall ensure that at check-in a clearly legible notice containing the following text is displayed in a manner clearly visible to passengers: "If you are denied boarding or if your flight is cancelled or delayed for at least two hours, ask at the check-in counter or boarding gate for the text stating your rights, particularly with regard to compensation and assistance".

2. An operating air carrier denying boarding or cancelling a flight shall provide each passenger affected with a written notice setting out the rules for compensation and assistance in line with this Regulation. It shall also provide each passenger affected by a delay of at least two hours with an equivalent notice. The contact details of the national designated body referred to in Article 16 shall also be given to the passenger in written form.

3. In respect of blind and visually impaired persons, the provisions of this Article shall be applied using appropriate alternative means.

Article 15

Exclusion of waiver

1. Obligations vis-à-vis passengers pursuant to this Regulation may not be limited or waived, notably by a derogation or restrictive clause in the contract of carriage.

2. If, nevertheless, such a derogation or restrictive clause is applied in respect of a passenger, or if the passenger is not correctly informed of his rights and for that reason has accepted compensation which is inferior to that provided for in this Regulation, the passenger shall still be entitled to take the necessary proceedings before the competent courts or bodies in order to obtain additional compensation.

Article 16 ·

Infringements

1. Each Member State shall designate a body responsible for the enforcement of this Regulation as regards flights from airports situated on its territory and flights from a third country to such airports. Where appropriate, this body shall take the measures necessary to ensure that the rights of passengers are respected. The Member States shall inform the Commission of the body that has been designated in accordance with this paragraph.

2. Without prejudice to Article 12, each passenger may complain to any body designated under paragraph 1, or to any other competent body designated by a Member State, about an alleged infringement of this Regulation at any airport situated on the territory of a Member State or concerning any flight from a third country to an airport situated on that territory.

3. The sanctions laid down by Member States for infringements of this Regulation shall be effective, proportionate and dissuasive.

Article 17

Report

The Commission shall report to the European Parliament and the Council by 1 January 2007 on the operation and the results of this Regulation, in particular regarding:

- the incidence of denied boarding and of cancellation of flights,

- the possible extension of the scope of this Regulation to passengers having a contract with a Community carrier or holding a flight reservation which forms part of a "package tour" to which Directive 90/314/EEC applies and who depart from a third-country airport to an airport in a Member State, on flights not operated by Community air carriers,

- the possible revision of the amounts of compensation referred to in Article 7(1).

The report shall be accompanied where necessary by legislative proposals.

EUR-Lex - 32004R0261 - EN - EUR-Lex

Electronically Filed - St. Louis County - November 23, 2016 - 11:59 AM

Article 18

Repeal

Regulation (EEC) No 295/91 shall be repealed.

Article 19

Entry into force

This Regulation shall enter into force on 17 February 2005.

This Regulation shall be binding in its entirety and directly applicable in all Member States.

Done at Strasbourg, 11 February 2004.

For the European Parliament

The President

P. Cox

For the Council

The President

M. McDowell

(1) OJ C 103 E, 30.4.2002, p. 225 and OJ C 71 E, 25.3.2003, p. 188.

(2) OJ C 241, 7.10.2002, p. 29.

(3) Opinion of the European Parliament of 24 October 2002 (OJ C 300 E, 11.12.2003, p. 443), Council Common Position of 18 March 2003 (OJ C 125 E, 27.5.2003, p. 63) and Position of the European Parliament of 3 July 2003. Legislative Resolution of the European Parliament of 18 December 2003 and Council Decision of 26 January 2004.

(4) OJ L 36, 8.2.1991, p. 5.

(5) OJ L 240, 24.8.1992, p. 1.

(6) OJ L 158, 23.6.1990, p. 59.

Commission Statement

The Commission recalls its intention to promote voluntary agreements or to make proposals to extend Community measures of passenger protection to other modes of transport than air, notably rail and maritime navigation.

Top

Electronically Filed - St Louis County - November 23, 2016 - 11:59 AM



# General Conditions of Carriage (Passenger and Baggage)

Frankfurt, May 2010

Publisher:
Deutsche Lufthansa Aktiengesellschaft
Customer Service Management
FRA XC/S

Article 1: Definitions

Article 2: Applicability

Article 3: Tickets

Article 4: Fares, Taxes, Fees and Charges

Article 5: Reservations

Article 6: Check-in and Boarding

Article 7: Right to refuse Carriage

Article 8: Baggage

Article 9: Schedules, Delays, Cancellation of Flights

Article 10: Refunds

Article 11: Conduct Aboard Aircraft

Article 12: Arrangements for Additional Services

Article 13: Administrative Formalities

Article 14: Liability for Damage

Article 15: Time Limitations for Claims and Actions

Article 16: Other Conditions

Article 17: Shorttitles

**EXHIBIT**

2

Electronically Filed - St. Louis County - November 23, 2016 - 11:59 AM



**Article 1: Definitions**
In these Conditions, except where the context otherwise requires or where it is otherwise expressly provided, the following expressions have the meanings respectively assigned to them, that is to say:

**Airline Designator Code**
means the two-characters or three letters which identify particular air carriers.

**Baggage**
means all articles intended for passenger use. Unless otherwise specified, it shall include both checked and unchecked baggage of the passenger.

**Baggage Check**
means those portions of the ticket which relate to the carriage.

**Baggage Tag**
means a document issued by Carrier solely for identification of checked baggage, the baggage (strap) tag portion of which is attached by Carrier to a particular article of checked baggage and the baggage (identification) tag portion of which is given to the passenger.

**Carrier**
means an air carrier other than ourselves, whose Airline Designator Code appears on your Ticket or on a Conjunction Ticket.

**Checked Baggage**
means Baggage of which we take sole custody and for which we have issued a Baggage Tag.

**Check-in Deadline**
means the time limit specified by the airline by which you must have completed check-in formalities and received your boarding pass.

**Code Share**
means carriage by air which will be operated by another carrier as indicated in the ticket. For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Conditions of Contract**
means those statements contained in or delivered with your Ticket or Itinerary/Receipt, identified as such and which incorporate by reference these Conditions of Carriage and notices.

**Conjunction Ticket**
means a Ticket issued to you with relation to another Ticket which together constitute a single contract of carriage.

**Convention**
means the Convention for unification of certain rules for international carriage by air which was agreed 28 May 1999 in Montreal (Montreal Convention).

**Coupon**
means both a paper Flight Coupon and an Electronic Coupon, each of which entitle you to travel on the particular flight identified on it.

Electronically Filed - St. Louis County - November 23, 2016 - 11:59 AM



**Damage**
includes death, wounding, or bodily injury to a passenger, loss, partial loss, theft or other damage, arising out of or in connection with carriage or other services incidental thereto performed by us.

**Days**
mean calendar days, including all seven days of the week: provided that, for the purpose of notification, the day upon which notice is dispatched shall not be counted; and provided further that for purposes of determining duration of validity of a Ticket, the day upon which the Ticket is issued, or the flight commenced shall not be counted.

**Electronic Coupon**
means an electronic flight coupon or other value document held in our database.

**Electronic Ticket**
means the Itinerary/Receipt issued by us or on our behalf, the Electronic Coupons and, if applicable, a boarding document.

**Flight Coupon**
means that portion of the Ticket that bears the notation "good for passage", or in the case of an Electronic Ticket, the Electronic Coupon, and indicates the particular places between which you are entitled to be carried.

**Force Majeure**
means unusual and unforeseeable circumstances beyond our control, the consequences of which could not have been avoided even if all due care had been exercised.

**Itinerary Receipt**
means a travel document or documents we issue to Passengers travelling on Electronic Tickets that contains the Passenger´s name, flight information and further notices relevant for the journey. This document is to be retained by the passenger and to be carried during the whole journey.

**Normal Fare**
means the highest fare approved for carriage in a given class of carriage.

**Passenger**
means any person, except members of the crew, carried or to be carried in an aircraft with our consent.

**Passenger Coupon/Passenger Receipt**
means that portion of the Ticket issued by us on our behalf, which is so marked and which ultimately is to be retained by you.

**Regulation (EC) 261/2004**
means the Regulation (EC) 261/2004 of the European Parliament and of the Council of 11 February 2004 establishing common rules on compensation and assistance to passengers in the event of denied boarding and of cancellation or long delay of flights, and repealing Regulation (EEC) No 295/91.

**SDR**
means a Special Drawing Right as defined by the International Monetary Fund.

**Special Fare**
means a fare which is lower than the normal fare.



**Stopover**
means a scheduled stop on your journey, at a point between the place of departure and the place of destination.

**Tariff**
means the published fares, charges and/or related Conditions of Carriage of an airline filed, where required, with the appropriate authorities. For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Ticket**
means either the document entitled "Passenger Ticket and Baggage Check" or the Electronic Ticket, in each case issued by us or on our behalf, and includes the Conditions of Contract, notices and coupons.

**Unchecked Baggage**
means any of your Baggage other than Checked Baggage.

**"We"**
means Deutsche Lufthansa Aktiengesellschaft.

**"You"**
means any person, except members of the crew, carried or to be carried in an aircraft pursuant to a ticket. (See also definition for "Passenger".)

**Article 2: Applicability**
**General**
2.1. These Conditions are the Conditions of Carriage refered to in the ticket and except as provided in Articles 2.2., 2.4. and 2.5., our Conditions of Carriage apply only on those flights, or flight segments, where our name or Airline Designator Code (LH) is indicated in the carrier box of the Ticket for that flight or flight segment.

**Charters**
2.2. If carriage is performed pursuant to charter agreement, these Conditions of Carriage apply only to the extent they are incorporated by reference or otherwise, in the charter agreement or the Ticket.

**Code Shares**
2.3. On some services we have arrangements with other carriers known as "Code Shares". This means that even if you have a reservation with us and hold a ticket where our name or airline designator code (LH) is indicated as the carrier, another carrier may operate the aircraft. If in case of a Code Share flight LH is indicated as the carrier these Conditions of Carriage also apply to such transportation. If such arrangements apply we will advise you of the carrier operating the aircraft at the time you make a reservation.

For Code Share services on flights operated by another carrier, LH is responsible for the entirety of the Code Share journey for all obligations to Passengers established in these rules. However, each Code Share partner has rules with respect to the operation of its own flights, which may differ from LH's rules for flights operated by Lufthansa. Those rules are incorporated herein by reference and form a part of these Conditions of Carriage.

The rules with respect to operations that may differ between Lufthansa and its Code Share partners include, but are not limited to:



Electronically Filed - St.Louis County - November 23, 2016 - 11:59 AM

1) Check-in time limits;
2) Unaccompanied minors;
3) Carriage of animals;
4) Refusal to transport;
5) Oxygen service;
6) Irregular operations;
7) Denied boarding compensation;
8) Baggage acceptance, allowance and liability

For the rules and regulations of Lufthansa Code Share partners we refer you to their websites or your travel agency.

You should review the rules for flights operated by another carrier under a Code Share agreement and familiarize yourself with such things as flight check-in requirements and policies regarding unaccompanied minors, carriage of animals, refusal to transport, oxygen services, irregular operations, denied boarding compensation and baggage acceptance among others.

Lufthansa will advise you at the time of your initial inquiry whether a LH flight is operated by another carrier under a Code Share arrangement.

**Overriding Law**
2.4. These Conditions of Carriage are applicable unless they are inconsistent with our Tariffs or applicable law in which event such Tariffs or laws shall prevail.
If any provision of these Conditions of Carriage is invalid under applicable law, the other provisions shall nevertheless remain valid.

**Conditions Prevail over Regulations**
2.5. Except as provided in these Conditions of Carriage, in the event of inconsistency between these Conditions of Carriage and any other regulations of Deutsche Lufthansa AG, dealing with particular subjects, these Conditions of Carriage shall prevail.


**Article 3: Tickets**

**General Provisions**
3.1.
3.1.1. We will provide carriage only to the Passenger named in the Ticket and against presentation, in case of ETIX coupon storage in the reservation system, of the flight coupon in question and all consecutive flight coupons as well as the passenger receipt of the Ticket.

3.1.2. A Ticket is not transferable.

3.1.3. Some Tickets are sold at discounted fares, which may be partially or completely non-refundable. For the individual terms please refer to the respective tarif conditions. You should choose the fare best suited to your needs. You may also wish to ensure that you have appropriate insurance to cover instances where you have to cancel your Ticket.

3.1.4. If you have a Ticket, as described in 3.1.3. above, which is completely unused, and you are prevented from travelling due to Force Majeure, provided that you promptly advise us and furnish evidence of such Force Majeure, we will provide you with a credit of the non-refundable amount for fare, for future travel on us, subject to deduction of a reasonable administration fee.

3.1.5. The Ticket is and remains at all times the property of the issuing carrier.

Electronically Filed - St. Louis County - November 23, 2016 - 11:59 AM



The ticket constitutes prima evidence of the contract of carriage between us and the passenger. The Conditions of Contract contained in the ticket are a summary of the provisions of these Conditions of Carriage.

**Requirement for Ticket**
3.1.6. Except in the case of an Electronic Ticket, you shall not be entitled to be carried on a flight unless you present a valid Ticket issued on your name containing the Flight Coupon for that flight and all other unused Flight Coupons and the Passenger Coupon. In addition, you shall not be entitled to be carried if the Ticket presented is mutilated or if it has been altered otherwise than by us or our Authorised Agents. In the case of an Electronic Ticket, you shall not be entitled to be carried on a flight unless you provide positive identification and a valid Electronic Ticket has been duly issued in your name. A flight booking in the electronic reservation system of Deutsche Lufthansa AG is only made a) on request of the passenger by billing his card number (LH Customer Card, Credit Card) and b) by presenting his card at check-in.

**Loss of Ticket or Customer Card**
3.1.7. (a) In case of loss or mutilation of a Ticket or part of it by you or non-presentation of a Ticket containing the Passenger Coupon and all unused Flight Coupons, upon your request we will replace such Ticket or part of it by issuing a new Ticket, provided there is evidence, readily ascertainable at the time, that a Ticket valid for the flight(s) in question was duly issued and you sign an agreement to reimburse us for any costs and losses, up to the value of the original ticket, which are necessarily and reasonably incurred by us or another carrier for misuse of the Ticket. We will not claim reimbursement from you for any such losses which result from our own negligence. The issuing carrier may charge a reasonable administration fee for this service, unless the loss or mutilation was due to the negligence of the issuing carrier, or its agent.

3.1.7. (b) Where such evidence is not available or you do not sign such an agreement, the carrier issuing the new Ticket may require you to pay up to the full Ticket price for a replacement Ticket, subject to refund if and when the original issuing carrier is satisfied that the lost or mutilated Ticket has not been used before the expiry of its validity. If, upon finding the original Ticket before the expiry of its validity, you surrender it to the carrier issuing the new Ticket, the foregoing refund will be processed at that time.

3.1.7. (c) When a customer chooses to use a card number for access to his electronic ticket account (LH Customer Card, German Bankcard or Credit Card), any loss or theft of that respective Lufthansa Customer or Credit Card must be reported immediately by the owner to the appropriate Lufthansa office (all Lufthansa Call Centers) in addition to the report at the Bank or Credit Card Company. Once the card has been reported invalid, it cannot be released for use again. Costs arising from misuse of the card before its loss was reported to Lufthansa will be charged to the passenger. Liability rules with other card functions (for example credit card functions) remain unaffected.

**Duty of Care**
3.1.8. A ticket is valuable and you should take appropriate measures to safeguard it and ensure it is not lost or stolen.

**Period of Validity**
3.2.
3.2.1. Except as otherwise provided in the Ticket, these Conditions, or a ticket, in which case the limitation will be shown on the Ticket), a Ticket is valid for:

3.2.1.1. (a) one year from the date of issue; or

3.2.1.1. (b) subject to the first travel occurring within one year from the date of issue, one year



from the date of first travel under the Ticket.

3.2.2. When you are prevented from travelling within the period of validity of the Ticket because at the time you request reservations we are unable to confirm a reservation, the validity of such Ticket will be extended, or you may be entitled to a refund in accordance with Article 10.

**Extension of Validity**
3.2.3. If after having commenced your journey, you are prevented from travelling within the period of validity of the Ticket by reason of illness, we may extend the period of validity of your Ticket until the date when you become fit to travel or until our first flight after such date, from the point where the journey is resumed on which space is available in the class of service for which the fare has been paid. Such illness must be attested to by a medical certificate. When the flight coupons remaining in the Ticket involve one or more Stopovers, the validity of such Ticket may be extended for not more than three months from the date shown on such a certificate. In such circumstances, we will similarly extend the period of validity of Tickets of the other members of your immediate family accompanying you.

3.2.4. In the event of death of a Passenger en route, the Tickets of persons accompanying the Passenger may be modified by waiving the minimum stay or extending the validity. In the event of a death in the immediate family of a Passenger who has commenced travel, the validity of the Passenger's Tickets and those of his or her immediate family who are accompanying the Passenger may likewise be modified. Any such modification shall be made upon receipt of a valid death certificate and any such extension of validity shall not be for a period longer than forty-five (45) days from the date of death.

**Coupon Sequence and Use**
3.3.
3.3.1. If you have chosen a tariff which provides for you keeping to a strict ticket sequence, please note the following: If carriage on a previous leg of the journey is not used or not used in the sequence anticipated on the ticket, the fare charged for that flight will be the fare that would have applied to your differing but actual route at the point of booking. If this fare is higher than the fare for the route indicated on your ticket, we can make further carriage conditional on you subsequently paying the additional charge which has accrued.

**Changes Requested by Passenger**
3.3.2. Should you wish to change any aspect of your transportation you must contact us in advance. The fare for your new transportation will be calculated and you will be given the option of accepting the new price or maintaining your original transportation as ticketed. Should you be required to change any aspect of your transportation due to Force Majeure, you must contact us as soon as practicable and we will use reasonable efforts to transport you to your next stopover or final destination, without recalculation of the fare.

3.3.3. Please be aware that while some types of changes will not result in a change of fare others will result in an increase in price.

3.3.3.1. In the event that you do not use the return trip shown on the Ticket, and Art. 3.2.3. not withstanding, we shall recalculate and demand the price in accordance with the one way fare for the leg actually flown valid at the time of first issuance of the Ticket.

3.3.3.2. Many fares are valid only on the dates and for the flights shown on the Ticket and may not be changed at all, or only upon payment of an additional fee.

3.3.4. Each Flight Coupon contained in your Ticket will be accepted for transportation in the

Electronically Filed - St.Louis County - November 23, 2016 - 11:59 AM



class of service on the date and flight for which space has been reserved. When a Ticket is originally issued without a reservation being specified, space may be later reserved subject to our Tariff and the availability of space on the flight requested.

**Name and Address of Carrier**
3.4. Our name may be abbreviated to our Airline Designator Code, or otherwise, in the Ticket. Our address shall be deemed to be the airport of departure shown opposite the first abbreviation of our name in the "carrier" box in the Ticket.

**Article 4: Fares, Taxes, Fees and Charges**
**Fares**
4.1. The fare to be paid covers the cost of transporting you from the airport at the actual place of departure to the airport at the actual final destination. It is calculated in accordance with the tariff which is applicable on the day you book your ticket for the flight dates and itinerary shown on your ticket. If you alter your route, this may have an impact on the fare you pay. The fare is recalculated on the basis of the actual route taken and, if applicable, the difference subsequently charged. Your fare does not include ground transport between airports or between airports and city centres.

**Taxes, Fees and Charges**
4.2. Applicable taxes, fees and charges imposed by government or other authority, or by the operator of an airport, shall be payable by you. At the time you purchase your Ticket, you will be advised of taxes, fees and charges not included in the fare, most of which will normally be shown separately on the Ticket. The taxes, fees and charges imposed on air travel are constantly changing and can be imposed after the date of Ticket issuance. If there is an increase in a tax, fee or charge shown on the Ticket, you will be obliged to pay it. Likewise, if a new tax, fee or change is imposed even after Ticket issuance, you will be obliged to pay it. Similarly, in the event any taxes, fees or charges which you have paid to us at the time of Ticket issuance are abolished or reduced such that they no longer apply to you, or a lesser amount is due, you will be entitled to claim a refund.

**Currency**
4.3. Subject to applicable law, fares and charges are payable in any currency acceptable to us, unless another currency is indicated by us or the applicable law. When payment is made in the country of departure in a currency other than the currency in which the fare is published, the exchange rate for such payment will be the banker's buying rate set by us on the day the ticket is issued.

**Article 5: Reservations**
**Reservation Requirements**
5.1.
5.1.1. We or our Authorised Agent will record your reservation(s). Upon request we will provide you with written confirmation of your reservation(s).

5.1.2. Certain fares have conditions which limit or exclude your right to change or cancel reservations. For the individual terms please refer to the respective tarif conditions.

**Ticketing Time Limits**
5.2. If you have not paid for the Ticket prior to specified ticketing time limit, as advised by us or the travel agency which issued the Ticket we may cancel your reservation.

**Personal Data**
5.3. You recognise that personal data has been given to us for the purposes of: making a reservation, purchasing a Ticket, obtaining ancillary services, developing and providing

Electronically Filed - St. Louis County - November 23, 2016 - 11:59 AM



services, facilitating immigration and entry procedures, and making available such data to government agencies, in connection with your travel. For these purposes, you authorise us to retain and use such data and to transmit it to our own offices, the travel agency which issued the Ticket, government agencies, other Carriers or the providers of the above-mentioned services.

**No particular Seat Guaranteed**
5.4. We will endeavour to honour advance seating requests, however, we cannot guarantee any particular seat. We reserve the right to assign or reassign seats at any time, even after boarding of the aircraft. This may be necessary for operational, safety or security reasons.

**Reconfirmation of Reservations**
5.5.
5.5.1. We do not require reconfirmation for Lufthansa flights. If other carriers require the passenger to reconfirm onward or return reservations, failure to comply with any such requirement will entitle the carriers to cancel the onward or return reservation.

5.5.2. You should check the reconfirmation requirements of any other Carriers involved in your journey with them. Where it is required, you must reconfirm with the Carrier whose Airline Designator Code appears for the flight in question in the Ticket.

**Cancellation of Onward Reservation and Service Charge when Space not Occupied**
5.6. Please be advised that if you do not show up for any flight without advising us in advance, we may cancel your return or onward reservation.

5.7. A service charge may be payable by a passenger who:

5.7.1. fails to arrive at Carrier's check-in-location at the airport or other point of departure by the time fixed by Carrier (or if no time fixed, sufficiently in advance of flight departure to permit completion of government formalities and departure procedures) and therefore, does not use space for which a reservation has been made for him, or

5.7.2. appear improperly documented and, therefore, not ready to travel, and as a consequence thereof does not use space for which a reservation has been made for him, or

5.7.3. cancels his reservation later than the time limit for cancellation prescribed by Carrier. The service charge shall not be payable if, due to a flight delay or cancellation, or omission of a scheduled stop, or failure to provide space, the passenger cancels his reservation or, for one of the aforementioned reasons, fails to arrive in time for departure.

**Article 6: Check-in and Boarding**
6.1. Check-in Deadlines are different at every airport and we recommend that you inform yourself about these Check-in Deadlines and honour them. Your journey will be smoother if you allow yourself ample time to comply with Check-in Deadlines. We reserve the right to cancel your reservation if you do not comply with the Check-in Deadlines indicated. We or the travel agency which issued the Ticket will advise you of the Check-in Deadline for your first flight on us. Information on check-in deadlines for our flights is available on our website or at the travel agency where the air ticket was issued. Unless otherwise stated, passengers must check in no later than 30 minutes prior to flight departure.

6.2. You must be present at the boarding gate not later than the time specified by us when you check in.

6.3. We may cancel the space reserved for you if you fail to arrive at the boarding gate in time.



6.4. We will not be liable to you for any loss or expense incurred, which is caused solely by you due to your failure to comply with the provisions of this Article.

For passengers who will be traveling on an Itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Article 7: Right to refuse Carriage**
**Right to refuse carriage**
7.1. In the reasonable exercise of our discretion, we may refuse to carry you on your journey or onward journey if we have notified you in writing before the booking that we would not at any time after the date of such notice carry you on our flights. This may be the case if you have contravened the rules of behaviour stated in Articles 7 and 11 on an earlier flight and transporting you is therefore unacceptable. Furthermore, we are entitled to refuse to carry you on your journey or onward journey or to cancel your seat booking, if

7.1.1. this measure is necessary for reasons of security or public order or to avert Infringement of any applicable laws or conditions governing flights from, into or over individual countries, or

7.1.2. the carriage of you causes security risks, health or discomfort for other passengers, or

7.1.3. the conduct, age, or mental or physical state, including your impairment from alcohol or drugs presents a hazard or risk to yourself, to passengers, to crew, or to property, or

7.1.4. you have committed misconduct on a previous flight, and we have reason to believe that such conduct may be repeated, or

7.1.5. you have refused to submit to a security check, or

7.1.6. you have not paid the applicable fare, taxes, fees or charges, or

7.1.7. you do not appear to have valid travel documents, may seek to enter a country through which you may transit, or for which you do not have valid travel documents, destroy your travel documents during the flight or refuse to surrender your travel documents to the flight crew, against receipt, when so requested, or

7.1.8. you present a Ticket that has been acquired unlawfully, or has been reported as being lost or stolen, is a counterfeit, or you cannot prove that you are the person named in the Ticket, or

7.1.9. you have failed to comply with the requirements set forth in Article 3.3. above concerning coupon sequence and use, or you present a Ticket which has been issued or altered in any way, other than by us or the travel agency which is authorised to issue Tickets, or the Ticket is mutilated, or

7.1.10. you fail to observe our instructions with respect to safety or security,

7.1.11. you fail to observe the non-smoking rule on board our aircraft or use of electronic equipment on board which you are not allowed to.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.



Electronically Filed - St. Louis County - November 23, 2016 - 11:59 AM



**Special Assistance**
7.2.
7.2.1. Acceptance for carriage of unaccompanied children, incapacitated persons, pregnant women, persons with illness or other people requiring special assistance has to be registered with us by telephone. Passengers with disabilities who have advised us of any special requirements they may have at the time of ticketing, and been accepted by us, shall not subsequently be refused carriage on the basis of such disability or special requirements.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Carriage of Children**
7.2.2. Children who have not yet reached their 5th birthday may only travel in the company of an adult of at least 18 years or brother or sister of at least 16 years. The carriage of unaccompanied minors (age between five and 12) requires prior arrangement with the carrier, together with payment of the published fee. Regulations governing the carriage of unaccompanied minors can be obtained from Carrier's sales offices.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Recourse when Carriage Refused**
7.3. The sole recourse of any person so refused carriage or whose reservation is cancelled for any reason specified in the preceding paragraph shall be recovery of the refund value, in accordance with Article 10.3.

7.2.3. Children may also travel in their own car-type safety seat on a seat in the cabin; for this, an additional seat must be booked for children under the age of two. The child's safety seat must secured with the aircraft seat belt during the entire flight. It must be suitable for use in the aircraft cabin. Otherwise, we are entitled to refuse to carry it on board. We do not accept any liability for any of the consequences, if the child's own safety seat is incorrectly secured, if it is not fit for purpose or for failure to comply with the instructions.

More information on travelling with children, especially the use in the cabin of suitable children's seats, is available under "Information and Service" on our www.lufthansa.com website.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Article 8: Baggage**
**Free Baggage Allowance**
8.1. You may carry some Baggage, free of charge, subject to our conditions and limitations, which are mentioned in the Ticket or are available upon request from us or the travel agency which issued the Ticket. The weight of each piece of baggage may not exceed 45 kilograms.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.



Electronically Filed - St. Louis County - November 23, 2016 - 11:59 AM

Lufthansa

**Excess Baggage**

8.2. You will be required to pay a charge for carriage of Baggage in excess of the free Baggage allowance. These rates are available from us or the travel agency which issued the Ticket upon request.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Items Unacceptable as Baggage**

8.3.

8.3.1. You must not include in your Baggage:

8.3.1.1. items which are likely to endanger the aircraft or persons or property on board the aircraft, such as those specified in the ICAO or IATA Dangerous Goods Regulations which are available from us or the travel agency which issued the Ticket by request. Especially the following items are unacceptable as baggage: explosives, compressed gases, corrosives, oxidizing, radioactive or magnetized materials, materials that are easily ignited, poisonous, offensive or irritating substances, and liquids of any kind (other than liquids in passenger's unchecked baggage for his use in the course of the journey);

8.3.1.2. items the carriage of which is prohibited by the applicable laws, regulations or orders of any state to be flown from or to;

8.3.1.3. Items which are reasonably considered by us to be unsuitable for carriage because they are dangerous, unsafe or by reason of their weight, size, shape or character, or which are fragile or perishable having regard to, among other things, the type of aircraft being used. Information about unacceptable items is available from us or the travel agency upon request.

8.3.2. If you are in possession of, or your baggage includes (a) weapons of any kind, in particular side arms and sprays used for offensive or defensive purposes, (b) munitions and explosives, (c) articles which, judging by their outward appearance or markings, appear to be weapons, munitions or explosives, you have to present them to us for inspection, prior to commencement of carriage. We accept such articles for carriage only if they are carried as cargo or checked baggage in accordance with the regulations governing carriage of dangerous goods. Sentence 2 shall not apply to police officers who, in performance of their official duties, are required to carry arms. During the flight they shall hand over their arms to the pilot in command.

8.3.3. Firearms and ammunition other than for hunting and sporting purposes are prohibited from carriage as Baggage. Firearms and ammunition for hunting and sporting purposes may be accepted as Checked Baggage. Firearms must be unloaded with the safety catch on, and suitably packed. Carriage of ammunition is subject to ICAO and IATA regulations as specified in 8.3.1.1.

8.3.4. We are not liable for any items referred to in 8.3.1. and 8.3.2. if these, despite being prohibited, are deliberately included in your baggage.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

Electronically Filed - St. Louis County - November 23, 2016 - 11:59 AM



**Right to Refuse Carriage**
8.4.
8.4.1. Subject to paragraph 8.3.2 and 8.3.3., we will refuse to carry as Baggage the items described in 8.3., and we may refuse further carriage of any such items upon discovery.

8.4.2. We may refuse to carry as Baggage any item reasonably considered by us to be unsuitable for carriage because of its size, shape, weight, content, character, or for safety or operational reasons, or the comfort of other passengers. Information about unacceptable items is available upon request.

8.4.3. We may refuse to accept Baggage for carriage unless it is in our reasonable opinion properly and securely packed in suitable containers.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Search of Passengers and Baggage**
8.5. If the passenger is unwilling to comply with a request to permit a search to be made of his person or his baggage to determine the presence of articles which are inadmissible according to or which have not been presented in accordance with paragraph 8.3. We may refuse to carry the passenger or his baggage and in that event we shall be under no liability to the passenger except to refund him in accordance with Article 10.3. of these Conditions of Carriage.

**Checked Baggage**
8.6.
8.6.1. Upon delivery to us of baggage to be checked we shall take custody thereof. We will there upon make an appropriate entry on the ticket which act shall constitute the issue of the baggage check. Baggage (identification) tags that may be issued by us in addition to the baggage check are for identification purposes only.

8.6.2. Checked Baggage must have your name or other personal identification affixed to it.

8.6.3. Checked Baggage will, whenever possible, be carried on the same aircraft as you, unless we decide for safety, security or operational reasons to carry it on an alternative flight. If your Checked Baggage is carried on a subsequent flight we will deliver it to you, unless applicable law requires you to be present for customs clearance.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Unchecked Baggage**
8.7.
8.7.1. We may specify maximum dimensions for Baggage which you carry on to the aircraft. If we have not done so, Baggage you carry onto the aircraft must fit under the seat in front of you or in an enclosed storage compartment in the cabin of the aircraft. If your Baggage cannot be stored in this manner, or is of excessive weight, or is considered unsafe for any reason, it must be carried as Checked Baggage.

8.7.2. Objects not suitable for carriage in the cargo compartment (such as delicate musical instruments), and which do not meet the requirements in 8.7.1. above, will only be accepted for carriage in the cabin compartment if you have given us notice in advance and permission has been granted by us. You may have to pay a separate charge for this service.

Electronically Filed - St Louis County - November 23, 2016 - 11:59 AM

Lufthansa

**Delivery of Checked Baggage**
8.8.
8.8.1. You are required to collect your Checked Baggage as soon as it is made available at you destination or stopover.

8.8.2. We shall deliver checked baggage to the bearer of the baggage check upon payment of all unpaid sums due to us under the Contract of Carriage.

8.8.3. If a person claiming the baggage is unable to produce the baggage check and identify the baggage by means of a baggage (identification) tag, if one has been issued, we will deliver the baggage to such person only on condition that he establishes to our satisfaction his right thereto.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Pets and Seeing-Eye Dogs**
8.9.
8.9.1. Carriage of dogs, cats, domesticated birds and other pets is subject to Carrier's approval. It is contingent on the fact that the animals are properly crated and accompanied by valid health and vaccination certificates, entry permits, and other documents required by countries of entry or transit. We reserve the right to determine the manner of carriage and to limit the number of animals which may be carried on a flight.

8.9.2. The weight of accompanied pets including the weight of containers and food carried shall not be included in the free baggage allowance of the passenger but shall be charged to and paid by the passenger at the rate applicable to excess baggage.

8.9.3. "Seeing-Eye" dogs and service dogs, service dogs and emotional support dogs, together with containers and food will be carried free of charge in addition to the normal free baggage allowance. For flights to and from the U.S. the passenger´s dependence upon an emotional support dog must be evidenced by a medical certificate.

8.9.4.
We will have no liability in respect of any such animal not having all the necessary documents for entry into or passage through any country unless such damage has been caused by Carrier's gross negligence or wilful misconduct. The passenger is liable for all damages which a pet might cause to others.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Article 9: Schedules, Delays, Cancellation of Flights**
**Schedules**
9.1.
9.1.1.
The flight times shown in timetables may change between the date of publication and the date you actually travel. We do not guarantee them to you and they do not form part of your contract with us.
9.1.2.
Before we accept your booking, we will notify you of scheduled flight time in effect as of the time, and it will be shown on your Ticket. If you provide us with contact information, we will

Electronically Filed - St. Louis County - November 23, 2016 - 11:59 AM



endeavour to notify you of any such changes. If, after you purchase your Ticket, we make a significant change to the scheduled flight time, which is not acceptable to you, you will be entitled to a refund in accordance with Article 10.2. If the legal liability rules apply we offer compensation and assistance according to Art. 14.4.1.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Cancellation, Rerouting, Delays, etc.**
9.2.
9.2.1.
We will take all necessary measures to avoid delay in carrying you. In the exercise of these measures and in order to prevent a flight cancellation, in exceptional circumstances beyond our control we may arrange for a flight to be operated on our behalf by an alternative carrier and/or aircraft.
9.2.2.
In case of a flight cancellation or flight delay we offer assistance and compensation to the concerned passengers according to the Regulation EC 261/2004.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Article 10: Refunds**
**Generals**
10.1.
We will refund a Ticket or any unused portion, in accordance with the applicable fare rules or Tariff, as follows:

**Person to whom refund will be made**
10.1.1.
Except as otherwise provided in this Article, we shall be entitled to make a refund either to the person named in the Ticket or, to the person who has paid for the Ticket, upon presentation of satisfactory proof of such payment.
10.1.2.
If a Ticket has been paid for by a person other than the passenger named in the Ticket, and the Ticket indicates that there is a restriction on refund, we shall make a refund only to the person who paid for the Ticket, or to that person's order.
10.1.3.
Except in the case of a lost Ticket, refunds will only be made on surrender to us of the Ticket and all unused Flight Coupons.
10.1.4.
A refund made to anyone presenting the passenger coupon and all unused flight coupons and holding himself out as a person to whom refund may be made in terms of subparagraphs 10.1.1. or 10.1.2. shall be deemed a refund to such person.

**Involuntary Refunds**
10.2.
10.2.1.
If we cancel a flight, fail to operate a flight reasonably according to schedule, fail to stop at your destination or Stopover, or cause you to miss a connecting flight which you hold a reservation, the amount of the refund shall be:

Electronically Filed - St. Louis County - November 23, 2016 - 11:59 AM



10.2.1.1.
if no portion of the Ticket has been used, an amount equal to the fare paid;
10.2.1.2.
If a portion of the Ticket has been used, the refund will be not less than the difference between the fare paid and the applicable fare for travel between the points for which the Ticket has been used.

**Voluntary Refunds**
10.3.
10.3.1.
If you are entitled to a refund of your Ticket for reasons other than those set out in 10.2., the amount of the refund shall be:
10.3.1.1.
if no portion of the Ticket has been used, an amount equal to the fare paid, less any reasonable service charges or cancellation fees;
10.3.1.2.
if a portion of the Ticket has been used, the refund will be an amount equal to the difference between the fare paid and the applicable fare for travel between the points for which the Ticket has been used, less any reasonable service charges or cancellation fees.

**Refund on Lost Ticket**
10.4.1.
If a Ticket or portion thereof is lost, a refund will be made on proof of loss satisfactory to Carrier and payment of the applicable fee, provided that:
10.4.1.1.
the lost Ticket or portion thereof has not been used or previously refunded or replaced without charging the ticket fare again (except where the use, refund or replacement by or to a third party resulted from our own negligence).
10.4.1.2.
the person to whom the refund is made undertakes, in such form as may be prescribed by us, to repay to us the amount refunded in the event of fraud and/or to the extent that the lost Ticket or portion of it is used by a third party (except where any fraud or use by a third party resulted from our own negligence). In this case a reasonable service charge will be debited to you.
10.4.2.
If we or our Authorized Agent lose the Ticket or a portion of it, the loss shall be our responsibility.

**Refusal of Refunds**
10.5.
10.5.1.
We may refuse refund when application therefore is made later than six months after the expiry of the validity of the ticket.
10.5.2.
We may refuse a refund on a Ticket which has been presented to us, or to Government officials, as evidence of intention to depart from that country, unless you establish to our satisfaction that you have permission to remain in the country or that you will depart from that country by another means of transport.

**Currency**
10.6.
All refunds will be subject to government laws, rules and regulations or orders of the country in which the ticket was originally purchased and to the country in which the refund is being made. Subject to the foregoing provision, refunds will be made in the currency in which the fare was paid.

Electronically Filed - St. Louis County - November 23, 2016 - 11:59 AM



**By whom Ticket Refund**
10.7.
Voluntary refunds will be made only by the carrier which originally issued the Ticket or by its agent if so authorised.

**Refund to Credit Cards Accounts**
10.8.
Refund due to tickets paid for with credit cards can only be credited to credit card accounts originally used for the ticket purchase. The refundable amount to be paid by us will be in accordance with the rules within this article only on the basis of the amount and the currency entered in the ticket. The refundable amount to be credited to the credit card account of the card owner can vary from the originally debited amount by the credit card company for the ticket due to differences in conversion. Such variances do not entitle the recipient of the refund to a claim against us.

**Article 11: Conduct Aboard Aircraft**
**General**
11.1.
If, in our reasonable opinion you conduct yourself aboard the aircraft so as to endanger the aircraft or any person or property on board, or obstruct the crew in the performance of their duties, or fail to comply with any instructions of the crew including but not limited to those with respect to smoking, alcohol or drug consumption, or behave in a manner which causes discomfort, inconvenience, damage or injury to other passengers or the crew, we may take such measures as we deem reasonably necessary to prevent continuation of such conduct, including restraint. You may be disembarked and refused onward carriage at any point, and may be prosecuted for offences committed on board the aircraft.

**Electronic devices**
11.2.
For safety reasons, we may forbid or limit operation aboard the aircraft of electronic equipment, including, but not limited to, cellular telephones, laptop computers, portable radios, CD players, electronic games or transmitting devices, including radio controlled toys and walkie-talkies. Operation of hearing aids and heart pacemakers is permitted.

**Non-Smoking Flights**
11.3.
All Lufthansa flights are Non-Smoking Flights. Smoking is prohibited in all areas of the aircraft.

**Seat belts compulsory**
11.4.
While being on your seat on board the aircraft you have the obligation to fasten your seat belt during the entire flight.

**Article 12: Arrangements for Additional Services**
12.1.
If we make arrangements for you with any third party to provide any services, like issuing a ticket or voucher relating to transportation or services, in doing so we act only as your agent. The terms and conditions of the third party service provider will apply.
12.2.
If we are also providing surface transportation to you, these conditions apply to such surface transportation. Such conditions are available from us upon request.

**Article 13: Administrative Formalities**

Electronically Filed - St. Louis County - November 23, 2016 - 11:59 AM



**General**

13.1.

13.1.1.

You are responsible for obtaining all required travel documents and visas and for complying with all laws, regulations, orders, demands and travel requirements of countries to be flown from, into or through which you transit.

13.1.2.

We shall not be liable for the consequences to any passenger resulting from his or her failure to obtain such documents or visas or to comply with such laws, regulations, orders, demands, requirements, rules or instructions.

**Travel Documents**

13.2.

Prior to travel, you must present all exit, entry, health and other documents required by law, regulation, order, demand or other requirement of the countries concerned, and permit us to take and retain copies thereof. We reserve the right to refuse carriage if you have not complied with these requirements, or your travel documents do not appear to be in order.

**Refusal of Entry**

13.3.

If you are denied entry into any country, you will be responsible to pay any fine or charge assessed against us by the Government concerned and for the cost of transporting you from that country. We may apply to the payment of such fare any funds paid to us for unused carriage, or any funds of the passenger in the possession of us. The fare collected for carriage to the point of refusal of entry or deportation will not be refunded by us.

**Passenger responsible for Fines, etc.**

13.4.

If we are required to pay any fine or penalty or to incur any expenditure by reason of your failure to comply with laws, regulations, orders, demands or other travel requirements of the countries concerned or to produce the required documents, you shall reimburse us on demand, any amount so paid or expenditure so incurred. We may apply towards such payment or expenditure the value of any unused carriage on our ticket, or any of your funds in our possession. The value of fine or penalty can vary from country to country and may be of a higher value as the fare paid for your ticket. In your own interests be aware to observe the admission regulations of each country you intend to travel to.

**Customs Inspection**

13.5.

If required, you shall attend inspection of your Baggage, by customs or other Government officials. We are not liable to you for any loss or damage suffered by you in the course of such Inspection or through your failure to comply with this requirement.

**Security Inspection**

13.6.

You are obliged to submit to any security checks by Governments, airport officials, Carriers or by us.

**Transmission of Passenger Data**

13.7.

We are entitled to transmit your personal data and all personal reservation data in connection with your flight to domestic and foreign authorities (including USA and Canada) if these authorities request us to do so due to compelling legal rules and regulations in order to fulfil the contract of carriage.

Electronically Filed - St. Louis County - November 23, 2016 - 11:59 AM



## Article 14: Liability for Damage

**General**

14.1.1.
The liability of Deutsche Lufthansa AG and each Carrier involved in your journey will be determined by its own Conditions of Carriage.

14.1.2.
Unless otherwise stated herein, international travel, as defined in the Convention, is subject to the liability rules of the Convention.

14.1.3.
Any liability we have for Damage, will be reduced by any negligence on your part which causes or contributes to the Damage in accordance with applicable law.

14.1.4.
We are liable only for damage occurring on our own flights. If we issue a ticket or check baggage over the lines of another Carrier we do so only as an agent for such other Carrier. Nevertheless, with respect to checked baggage the passenger shall also have a right of action against the first or last Carrier.

14.1.5.
If the air carrier actually performing the flight is not the same as the contracting air carrier, you have the right to address a complaint or to make a claim for damage against either. If the name or code (Code Share) of an air carrier is indicated on the ticket, that air carrier is the contracting carrier.

14.1.6.
We are not liable for any damage arising from its compliance with any laws or government regulations, orders or requirements, or from failure of the passenger to comply with the same.

14.1.7.
Our liability shall not exceed the amount of proven damages under any circumstances. We are only liable for indirect or consequential damages when such damage was caused by our gross negligence or wilful misconduct; the provisions of the Convention shall continue to be applicable without change.

14.1.8.
Any exclusion or limitation of liability of us shall apply to and be for the benefit of agents, servants and representatives of us and any person whose aircraft is used by us and such person's agents, servants and representatives. The aggregate amount recoverable from us and from such agents, servants, representatives and persons shall not exceed the amount of our limit of liability.

14.1.9.
Unless so expressly provided nothing herein contained shall waive any exclusion or limitation of liability of us under the Convention or applicable laws.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

## Compensation in Case of Death or Injury

14.2

14.2.1.
There are no financial limits to the liability for passenger injury or death. For damages up to 113,100 SDRs (approximate 121.243 EUR) the air carrier cannot contest claims for compensation. Above the amount, the air carrier can defend itself against a claim by proving that it was not negligent or otherwise at fault.

14.2.2.
If a passenger is killed or injured, the air carrier must make an advance payment, to cover immediate economic needs, within 15 days from the identification of the person entitled to

Electronically Filed - St Louis County - November 23, 2016 - 11:59 AM



compensation. In the event of death, this advance payment shall not be less than 16,000 SDRs (approximate 17,600 EUR)

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Destruction, Loss or Damage to Baggage**
14.3
14.3.1.
We are liable for destruction, loss or damage to baggage up to 1,131 SDRs (approximate 1,213EUR). In the case of checked baggage, we are liable even if not at fault, unless the baggage was defective. In case of unchecked baggage, the carrier is liable only if at fault.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Higher Limits for Baggage**
14.3.2.
A passenger can benefit from a higher liability limit by making a special declaration at the latest at check-in and by paying a supplementary fee.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Complaints on Baggage**
14.3.3.
If the baggage is damaged, lost or destroyed the passenger must write and complain to the air carrier as soon as possible. In case of damage to checked baggage, the passenger must write and complain within seven days and in case of delay within 21 days, in both cases from the date on which the baggage was placed at the passenger's disposal.

14.3.4.
We are not liable for damage to a passenger's baggage caused by property contained in passenger's baggage unless we caused such damage by our gross negligence or wilful misconduct. Any passenger whose property causes damage to another passenger's baggage or to the property of us shall indemnify us for all losses and expenses incurred by us as a result thereof.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Passenger and Baggage Delays**
14.4.
14.4.1.
In case of passenger delay we are liable for damage unless we took all reasonable measures to avoid damage or it was impossible to take such measures. The liability for passenger delay is

A STAR ALLIANCE MEMBER

Electronically Filed - St. Louis County - November 23, 2016 - 11:59 AM



limited to 4,694 SDRs (approximate 5,032 EUR). In case of a flight delay of 2 hours or more we offer assistance to the concerned passengers and a ticket refund according to Regulation (EC) No 261/2004.

14.4.2.
In case of a baggage delay we are liable for damage unless we took all reasonable measures to avoid the damage or it was impossible to take such measures. The liability is limited to 1,131 SDRs (approximate 1,213 EUR).

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

**Non-Carriage due to Overbooking**
14.5.
In case of a denied boarding we offer compensation, assistance and ticket refund within the scope of Regulation (EC) 261/2004 or DOT Part 250, depending on the current EUR/USD exchange rate.
14.5.1.
The carrier will give priority to unaccompanied children, ill and handicapped people. In all other cases, passengers will be allocated a seat on the aircraft in the order in which they check in, also taking into account any specific interests.
14.5.2.
When we reasonably expect to deny boarding on a flight, we first call for volunteers to surrender their reservation in exchange for benefits.
14.5.3.
Every passenger who is turned away is entitled to a compensation. This is calculated as follows:

On all flights with a distance to destination of 0 km - 1,500 km (0 - 932 miles) the compensation amount is € 250; reduction of compensation by 50% (compensation € 125). If the arrival time of the alternative flight is not later than 2 hours after scheduled arrival time of flight.

On all intra-community flights with a distance of more than 1,500 km (932 miles) as well as on all other flights with a distance of 1,500 km - 3,500 km (932 - 2,175 miles) the compensation amount is € 400; reduction of compensation by 50% (compensation € 200), if the arrival time of the alternative flight is not later than 3 hours after scheduled arrival time of flight.

On all flights outside the community with a distance of more than 3,500 km (2,175 miles) the compensation amount is € 600; reduction of compensation by 50% (compensation € 300), if the arrival time of the alternative flight is below/up to 4 hours after scheduled arrival time of flight.

Payment will be made in local currency, at least at the fixed rate of exchange valid for the Euro.
Damages will be paid in cash or in form of a credit note, as the passenger chooses. If the passenger is carried in a lower class than that booked, he has the right to a refund according to the Regulation EC 261/2004.

In the event DOT Part 250 denied boarding compensation is to be paid, the calculation is as follows:

LH shall pay compensation to passengers denied boarding involuntarily from an oversold flight at the rate of 200% of the sum of the value of the passenger's remaining flight coupons up to the passenger's next Stopover, or if none, to the passenger's final destination with a maximum of USD 800. However, the compensation shall be one-half the amount described above, with a

Electronically Filed - St Louis County - November 23, 2016 - 11:59 AM



USD 400 maximum, if LH arranges for comparable air transportation, or other transportation used by the passenger that, at the time either such arrangement is made, is planned to arrive at the airport of the passenger's next stopover or if none, at the airport of the passenger's final destination, not later than two hours after the time the direct or connecting flight on which confirmed space is held is planned to arrive in the case of interstate and overseas air transportation, or four hours after such time in the case of foreign air transportation.

Payment will be made in local currency, at least at the fixed rate of exchange valid for the USD. Damages will be paid in cash or in form of a credit note, as the passenger chooses.
14.5.4.
The financial compensation will be taken into account when deciding about further claim for damage.

### Cancellation
14.5.5.
In case of flight cancellation we offer assistance and ticket refund to the passenger within the scope of Regulation (EC) 261/2004. If a financial compensation has to be paid, the amounts mentioned in article 14.5.3. and the conditions of article 14.5.3. are valid.

### Article 15: Time Limitations for Claims and Actions
### Notice of Claims
15.1.
If you accept the baggage delivered to you unconditionally, we take for granted as long as opposite not proven, that it was delivered to you in good condition and according to the contract of carriage.
No action shall lie in the case of damage to baggage unless the person entitled to delivery complains to Carrier forthwith after the discovery of the damage, and, in international air travel at the latest within seven days from the date of receipt; and in the case of any damage resulted due to delay, unless the complaint is made at the latest within 21 days from the date on which the baggage has been placed at his disposal. Every complaint must be made in writing and dispatched within the times aforesaid.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

### Limitation of Actions
15.2.
Any right to damages shall be extinguished if an action is not brought within two years reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped. The method of calculating the period of limitation shall be determined by the law of the court assigned the case.

For passengers who will be traveling on an itinerary operated by one of Lufthansa's Code Share partners, please see Article 2.3 for a discussion of rules that may differ from the rules described in this rule.

### Article 16: Other Conditions
Carriage is also provided in accordance with certain other regulations and conditions applying to or adopted by us. These regulations and conditions which may vary from time to time are important. They concern among other things: the carriage of unaccompanied minors, pregnant women, and sick passengers, restrictions on use of electronic devices and items, the on board consumption of alcoholic beverages.



Regulations and conditions concerning these matters are available from us upon request.

**Article 17: Shorttitles**
The shorttitles of each Article of these Conditions are for convenience only, and are not to be used for interpretation of the text.

Electronically Filed - St Louis County - December 13, 2016 - 12:03 PM

EDWARD P. MANGANO
COUNTY EXECUTIVE



MICHAEL J. SPOSATO
SHERIFF

## COUNTY OF NASSAU
## SHERIFF'S DEPARTMENT
240 OLD COUNTRY ROAD
MINEOLA, NY 11501
516-571-2113

21ST JUDICIAL CIRCUIT COURT COURT,  COUNTY

_____

**Plaintiff**

BIBI FRANCESCHELLI

-against-

DEUTSCHE LUFTHANSA  AG

_____

**Defendant**

**AFFIDAVIT OF SERVICE
CORPORATION**

**File No. : 1650233**

STATE OF NEW YORK COUNTY OF NASSAU    SS:

Deputy Sheriff R. Kerwin being duly sworn, deposes and says that deponent is not a party to the action, is over 18 years of age resides at <???> ,Nassau County, N.Y. that on the 23rd day of November, 2016 at 10:39 AM hours at 1640 HEMPSTEAD TURNPIKE EAST MEADOW, NY 11554  , Nassau County, NY deponent served the annexed Summons in this action on DEUTSCHE LUFTHANSA  AG, the defendant therein named, by delivering a true copy thereof to Robin McDougall, Paralegal personally, the  thereof.

Deponent knew the corporation so served to be the corporation mentioned and described in said papers  as defendants therein.  The following description of Robin McDougall, Paralegal is true and accurate to my best skill, knowledge and ability.

| Sex | Skin Color | Hair Color | Age | Height | Weight |
|---|---|---|---|---|---|
| Female | White | Blonde | 36-50 Yrs | 5'0" - 5'3" | 131 -160 Lbs |

OTHER IDENTIFYING FEATURES:

Sworn to before me, this
23rd day of November, 2016

_____
R. Kerwin, Deputy Sheriff

SH-1961  5/00